IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-02800-MSK

GILBERT MEDINA,

    Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of the Social Security Administration,

    Defendant.

## OPINION AND ORDER REVERSING AND REMANDING DISABILITY DETERMINATION

**THIS MATTER** comes before the Court as an appeal from the Commissioner's Final Administrative Decision ("Decision") determining that the Plaintiff Gilbert Medina is not disabled within the meaning of sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Having considered all of the documents filed, including the record **(#17)**, the Court now finds and concludes as follows:

### JURISDICTION

The Court has jurisdiction over an appeal from a final decision of the Commissioner under 42 U.S.C. § 405(g). Mr. Medina sought disability insurance benefits and supplemental security income under the Social Security Act based on mental and physical impairments that rendered him unable to work as of May 14, 2013. The state agency denied his claim. He requested a hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision. Mr. Medina appealed to the Appeals Council, which denied his request for review, making the ALJ's determination the final decision of the Commissioner. Mr. Medina timely

appealed to this Court.

## STATEMENT OF FACTS

The Court offers a brief summary of the facts here and elaborates as necessary in its analysis.

Mr. Medina was born on June 25, 1962. He graduated from High School and has worked as an aircraft mechanic, a utility worker, a pump mechanic, and a truck driver. He contends that mental and physical impairments prevent him from working.

Mr. Medina suffers from multiple mental and physical impairments. His mental health impairments include bipolar disorder, depression, and anxiety. His physical impairments include chronic low back pain, obesity, joint problems, and diabetes.

**Treatment and Opinions by Treating Professionals**

Susan Ponder, a Clinical Nurse Specialist, began providing psychiatric treatment to Mr. Medina in November 2013. She filled out a mental residual functional capacity statement in support of his disability claim. According to her, Mr. Medina's abilities to make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting preclude his ability to work for 5% of an eight-hour workday; his abilities to remember locations and work-like procedures, understand, remember, and carry out very short and simple instructions, adapt appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and set realistic goals or make plans independently of others preclude his ability to work for 10% of an eight-hour workday; and his abilities to understand, remember, and carry out detailed instructions, maintain attention and

concentrations for extended periods of time, perform activities within a schedule, maintain regular attendance, be punctual and within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation preclude his ability to work for 15% or more of an eight-hour workday. She further opined that because of his physical and mental impairments, he would be off-task for more than 30% of an eight-hour workday, would be absent from work for five or more days each month, would be unable to complete an eight-hour workday five or more days each month, and could only be expected to perform a job, eight hours per day, five days per week, on a sustained basis for less than 50% of the time.

Mr. Medina began receiving treatment from physicians and other providers at Kaiser Permanente, including Kari M. Kearns, M.D., Stephen W. Shane, D.O., and Katherine J. Karstens, in July 2013 for his chronic lower back pain, knee pain, foot pain, and diabetes. These providers also initially monitored the medications prescribed to him to treat his bipolar disorder until he began receiving treatment from Ms. Ponder. They also performed X-rays which revealed a disc bulge in Mr. Medina's back in the L5-S1 area and mild arthritis in his knees and feet. Mr. Medina did not submit a medical source statement in support of his disability claim from any of these providers.

On February 12, 2014, Mr. Medina was admitted to Lutheran Medical Center with suicidal ideation and a plan to overdose on his sleeping pills. After receiving treatment, he was discharged to Bridge House, a step down facility and ultimately returned home. Mr. Medina did

not submit a medical source statement in support of his disability claim from any of these providers.

Mr. Medina also received treatment from several other medical providers. Dhar Pradeep at Salud Family Health Centers treated him briefly before he began receiving treatment at Kaiser Permanente. Ms. Jeanine Tarrant, PA-C, Mr. Brian W. Drake, PA-C, and Dr. Megan Moon at Practice Fusion treated Mr. Medina's low-back pain with medication and soft-tissue therapies between July 2014 and February 2015. Joseph Michael Morreale, M.D., performed back surgery on Mr. Medina to address his disc bulge in the L5-S1 area. Mr. Medina did not submit a medical source statement in support of his disability claim from any of these providers.

### Opinions by Non-treating Professionals

Mark Dilger, M.D., a state-agency physician, reviewed Mr. Medina's file but did not examine him. He opined that Mr. Medina had the following severe impairments: DDD (disorders of back-discogenic and degenerative), major joint dysfunction, diabetes mellitus, and obesity. He further opined that Mr. Medina's bipolar disorder, depression, and anxiety are non-severe.

Kimberly Terry, M.D., also a state-agency physician, performed a physical residual functional capacity assessment by reviewing Mr. Medina's file but did not examine him. She opined that Mr. Medina could occasional lift and/or carry twenty pounds, frequently lift ten pounds, stand, sit, and/or walk for about six hours in an eight-hour workday, and could push and/or pull with the only restrictions that he was not to lift or carry greater than twenty pounds. She further opined that he had no postural, manipulative, visual, communicative, or environmental limitations.

Finally, Bruce Lipetz, PsyD, a state-agency clinical psychologist, performed a case analysis on Mr. Medina's disability claim by reviewing Mr. Medina's file but did not examine

him. He opined that Mr. Medina suffers from affective disorders (bipolar and depression), anxiety-related disorders (anxiety, panic, and drug withdrawal), and substance addiction disorders (marijuana, opiate, and anxiolytic abuse) but that they are non-severe. He further opined that these impairments only mildly restrict Mr. Medina's activities of daily living, ability to maintain social functioning, and ability to maintain concentration, persistence, or pace and that they did not result in any episodes of decompensation.

## THE ALJ'S DECISION

The ALJ analyzed his case pursuant to the sequential five-step inquiry. At step one, the ALJ found that Mr. Medina had not worked or engaged in substantial gainful activity from the alleged onset date of May 14, 2013. At step two, the ALJ found Mr. Medina had the medically severe impairment of degenerative lumbar disc disease. At step three, the ALJ found that Mr. Medina's impairment did not equal the severity of a listed impairment in the appendix of the regulations. At step four, the ALJ first assessed Mr. Medina's Residual Functional Capacity ("RFC") and determined that:

> [Mr. Medina] has the residual functional capacity to perform a range of light exertion work as defined in the Regulations with the following limitations: he is able to lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours and stand and/or walk for 6 hours in an 8-hour day.

The ALJ then found that Mr. Medina could not perform past relevant work as a utility worker, dump truck driver, light truck driver, aircraft mechanic, and route driver. However, at step five, the ALJ found that Mr. Medina could perform jobs that exist in significant numbers in the national economy, and thus, he was not disabled.

## ISSUES PRESENTED

Mr. Medina nominally raises eighteen objections to the Decision. However, he offers

argument only as to six[1]: (1) the ALJ erred by failing to consider all of his severe and non-severe impairments when formulating the RFC; (2) the ALJ erred by when he assigned Ms. Ponder's opinions little weight; (3) the ALJ erred when he found that Mr. Medina's mental impairments did not meet or equal a listing; (4) the ALJ failed to consider the statement of Mr. Medina's sister properly; (5) the ALJ improperly rejected Mr. Medina's subjective reports of pain and non-exertional limitations; and (6) the ALJ failed to consider portions of the vocational expert's testimony that supported a finding that Mr. Medina is disabled. The Court will only address whether the ALJ erred when it assigned Ms. Ponder's opinions little weight because the issue is dispositive.

## STANDARD OF REVIEW

On appeal, a reviewing court's judicial review of the Commissioner of Social Security's determination that claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence. *Hamilton v. Sec'y of Health &Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). If the ALJ failed to apply the correct legal standard, the decision must be reversed, regardless of whether there was substantial evidence to support factual findings. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). In determining whether substantial evidence supports factual findings, substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires more than a scintilla but less than a preponderance of the evidence. *Lax*, 489 F.3d at

---

[1] By failing to provide argument as to his remaining twelve objections, Mr. Medina has waived them. *See Wall v. Astrue*, 561 F.3d 1048, 1066-67 (10th Cir. 2009).

1084; *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Although a reviewing court must meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

## ANALYSIS

Mr. Medina argues that the ALJ erred by failing to provide legitimate reasons for not giving Ms. Ponder's opinions controlling weight. He also challenges the ALJ's decision to assign the opinions little weight compared to Dr. Lipetz's opinion. In response, the Commissioner argues that the ALJ's decision to discount Ms. Ponder's opinion and adopt instead Dr. Lipetz's opinion was reasonable.

The weight an ALJ should give to medical opinion evidence depends on a number of factors. A medical opinion provided by a treating physician must be given controlling weight if (1) the treating physician is an acceptable medical source, (2) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (3) the opinion is consistent with the other substantial evidence in the record. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 6, 2006); *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). If any of these requirements is not satisfied, then the opinion is not accorded controlling weight. SSR 06-03p, 2006 WL 2329939, at *1; *Drapeau v. Massanri*, 255 F.3d 1211, 1213 (10th Cir 2001).

The Court first considers whether Ms. Ponder qualifies as an acceptable medical source. Acceptable medical sources include licensed medical or osteopathic doctors, psychologists, optometrists, podiatrists, and qualified speech-language pathologists, but they do not include clinical nurse specialists. *See* SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 6, 2006); *Frantz v.*

7

*Astrue*, 509 F.3d 1299, 1300-02 (10th Cir. 2007). Ms. Ponder is a clinical nurse specialist. Clinical nurse specialists are not acceptable medical sources. Thus, her opinions are not entitled to controlling weight, and the ALJ did not err in this respect.

Even though Ms. Ponder is not an acceptable medical source, however, the ALJ was required to consider her opinions and explain what relative weight he assigned to the opinions in comparison to other medical opinions in the record. *See* SSR 06-03p, 2006 WL 2329939, at *1; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163-64 (10th Cir. 2012); *Drapeau v. Massanri*, 255 F.3d 1211, 1213 (10th Cir 2001). The factors considered for assessing the weight of all medical opinions other than those entitled to controlling weight, whether from an acceptable medical source or not, are as follow:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016). None of these factors are controlling; not all of them apply to every case, and an ALJ need not expressly discuss each factor in his or her decision. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, "the record must reflect that the ALJ *considered* every factor in the weight calculation." *Andersen v. Astrue*, 319 Fed. App'x 712, 718-19 (10th Cir. 2009)(*emphasis* in original). Finally, the ALJ must provide legitimate, specific reasons for the relative weight assigned. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

In the Decision, the ALJ gave Ms. Ponder's opinions little weight stating,

> The record contains an opinion at Exhibit C3F authored in April 2014 by Susan Ponder … at Community Reach Center, which opines to the claimant having very significant limitations including being off task, missing days of work, and

inadequate job performance. Records from this facility dated between November 2013 and September 2014 (Exhibit C8F) fail to support the severity of mental symptoms and limitations described by Ms. Ponder at Exhibit C3F, particularly when the claimant complies with prescribed medications. Though some low GAF scores (43-45) were noted in these records, these assessments were not accompanied by specific examination signs and findings (Exhibit C8F, pp. 21-35). On March 26, 2014, the claimant appeared anxious but it was also recorded that he had run out of medication about two weeks earlier, and he otherwise had been "much improved" and "was doing pretty decent while on his meds" (Exhibit C8F, pp. 17-18). Also of note, later in April 2014 the claimant was still admittedly using marijuana at least once a week (Exhibit C8F, p. 13). At the hearing he reported even greater use, stating that he used it a couple times a day until just a few weeks before the hearing when he stopped using it. In any case, records from May and September 2014 again note the claimant to be out of medication with increased symptoms (Exhibit C8F, pp. 3-6, 7-10).

The claimant's failure to take his medications as prescribed even though he was "much improved" with the medications, and despite apparently being able to obtain marijuana during this time, diminishes the persuasiveness of Ms. Ponder's opinion at Ex C3F. This opinion is generally not supported by the treatment records from Community Reach Center at Exhibit C8F and also conflicts with the better reasoned and better supported recent opinions of the Social Security Administration (SSA) psychological consultant [Dr. Lipetz] (Exhibits C6F and C7F). The undersigned accords considerable weight to [Dr. Lipetz's] opinions [that Mr. Medina's mental impairments are non-severe and only mildly affect his ability to work] and gives little weight to Ms. Ponder's assessment.

The ALJ's explanation as to the weight given to Ms. Ponder's opinions overlooks the obligation to show that he considered the above-listed six factors. This is legal error. *See Andersen*, 319 Fed. App'x at 718-19. But if the reasons articulated by the ALJ constitute legitimate reasons for giving Ms. Ponder's opinions little weight, then the error is harmless. Thus, the Court considers whether the reasons given by the ALJ are sufficient for the determination that Ms. Ponder's opinions are only entitled to little weight.

The first reason the ALJ gave for assigning Ms. Ponder's opinions little weight is that Mr. Medina failed to take his medications as prescribed "even though he was 'much improved' with the medications, …" That is, the ALJ found that when Mr. Medina took his medications, he only suffered from non-severe mental impairments that only mildly affected his ability to work.

9

The ALJ based this finding on a three singular appointments that Mr. Medina had with Ms. Ponder in March, May, and September 2014.

The ALJ did not address, and thus it is not evident that the ALJ considered evidence that that Mr. Medina suffered from severe mental impairments that significantly affected his ability to work even when he took his medications. For example, while on medications, on November 12, 2013, Mr. Medina told Ms. Ponder that he thought about suicide daily and expressed feelings of worthlessness, and Ms. Ponder observed that he was "extremely anxious, marginally stable" and could not even sit still during his appointment. R. 431-33. On November 27, 2013, he reported that he was feeling depressed and had suicidal thoughts, and Ms. Ponder observed that he was distracted and anxious during the appointment. R. 427-30. On December 11, 2013, Mr. Medina stated that although his anxiety had improved, his depression had worsened and he continued to have suicidal thoughts. R. 423. On February 25, 2014, after having been hospitalized and spending time at a step-down facility because he intended to commit suicide by overdosing on his sleeping pills, Mr. Medina reported that his anxiety had improved, but Ms. Ponder observed that he was "extremely anxious and depressed, marginally stable". R. 419-22. On April 23, 2014, Mr. Medina reported "bad" depression and frequent suicidal thoughts, and Ms. Ponder observed, "[Mr. Medina] is extremely anxious and depressed-which he largely attributes to pain, marginally stable-his psych status will likely improve once his pain is properly treated." R. 410-14. Other than reporting on November 27, 2013 that he was not taking Seroquel because it was causing him to be lethargic, there is no indication that Mr. Medina had not been taking his medications as prescribed prior to any of these appointments. R. 410-14, 419-33.

Additionally, on September 17, 2014, Mr. Medina had an appointment with Ms. Ponder and reported that he had not been taking his prescription for Trileptal. R. 400. The ALJ cited to

10

this in support of finding that Mr. Medina's mental impairments are non-severe and only mildly affected his ability to work when he takes his medication. R. 28. But within the same treatment note there is evidence contradicting such a finding. Ms. Ponder observed, "For bipolar symptoms: he ran out of Trileptal so will stop this – it was not all that effective." R. 403. She also indicated that Mr. Medina should stop taking his prescriptions for Celexa and Buspar because they were ineffective. *Id*. This evidence that Mr. Medina's medications were ineffective unquestionably contradicts the ALJ's finding that Mr. Medina's mental impairments are well-managed with his prescription medication, but the ALJ also failed to address it.

An ALJ cannot cherry-pick evidence in support of his decision to deny benefits while failing to discuss contrary evidence, especially when the contrary evidence is contained in the same documentation as the supporting evidence. *See Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). Indeed, although an ALJ is not required to discuss every item of evidence before him, he is required to "discuss the uncontroverted evidence he [chose] not to rely upon, as well as significantly probative evidence he reject[ed]." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). The failure to do so makes it impossible for an appellate court to assess whether an ALJ's decision is supported by substantial evidence and requires reversal and remand for the ALJ to set out specific findings and reasons for accepting or rejecting the uncontroverted or substantially probative evidence the ALJ did not rely on or rejected. *Clifton*, 79 F.3d at 1009-10.

The ALJ cherry-picked statements from Ms. Ponder's treatment notes to support a finding that Mr. Medina's mental impairments are non-severe and only mildly affect his ability to work when he takes his medications. There is evidence within the same documentation that

contradicts this finding. The ALJ failed to address it, and therefore, the Court cannot meaningfully review whether the ALJ's first reason for assigning Ms. Ponder's opinions little weight is supported by substantial evidence.

The second reason the ALJ gave for assigning Ms. Ponder's opinions little weight is that Mr. Medina was able to obtain marijuana during the time that he was not taking his medications. The ALJ does not explain how Mr. Medina's ability to obtain marijuana is pertinent to the reliability of Ms. Ponder's opinions. Reviewing the record, there is a statement in Dr. Lipetz's case analysis that Mr. Medina had not obtained other medications because he lacked money. Perhaps the ALJ understood that Mr. Medina blamed his failure to take medications as prescribed on an inability to pay for them, which the ALJ did not believe because he could still purchase marijuana. However, there is no indication in Ms. Ponder's treatment notes that Mr. Medina blamed his failure to take his medications on the inability to purchase them. R. 400-09, 415-18. Instead, the treatment notes state that he ran out of his medications three times. *Id*. The first time he ran out, he could not refill them because Ms. Ponder did not have an available appointment. R. 415. The second time he ran out, he could not refill them because it was too early to do so. R. 405. There is no explanation as to why he could not refill them the third time he ran out of them. R. 400-04. Thus, the Court is at a loss as to how the ALJ found that Mr. Medina's ability to purchase marijuana affects the weight of Ms. Ponder's opinions and cannot say that it is a legitimate reason for assigning her opinions little weight.

The third reason the ALJ gave for assigning Ms. Ponder's opinions little weight is that the opinions are generally inconsistent with her treatment records. This statement suffers from the same deficiencies as the finding that Mr. Medina's mental impairments are non-severe and only mildly affect his ability to work when he takes his medications as prescribed. As noted,

12

there is significant evidence in Ms. Ponder's treatment notes showing that Mr. Medina suffered from severe mental impairments that significantly affected his ability to work even when he took his medications as prescribed. Because the ALJ failed to discuss it, the Court cannot meaningfully review whether the ALJ's third reason for assigning Ms. Ponder's opinions little weight is supported by substantial evidence.

The fourth and final reason the ALJ gave for assigning Ms. Ponder's opinions little weight is that Dr. Lipetz's opinions are better reasoned and better supported. The ALJ does not elaborate on this reason. However, the Court has reviewed Dr. Lipetz's case analysis. The first four pages of the case analysis summarize the medical records Dr. Lipetz reviewed, including Ms. Ponder's Mental Residual Functional Capacity Statement. R. 381-84. The next twelve pages are a worksheet titled "Psychiatric Review Technique". R. 385-96. The worksheet contains no reasoning or explanations supporting the boxes Dr. Lipetz checked or lines he filled in. Although the Review finds that Mr. Medina used marijuana, and abused opiates and anxiolytic medication, there is no analysis or source for such observation. Of even more concern are "Consultant's Notes", where Dr. Lipetz discounts Ms. Ponder's opinions and stated that they are not entitled to any weight because there is no evidence that she actually treated Mr. Medina. This statement is factually wrong, as her treatment records are of record in this matter. In addition, Dr. Lipetz stated that there is no evidence that Mr. Medina was ever hospitalized due to suicidal ideation or other psychiatric problems. This statement is also factually wrong. The record in this matter contains medical records from Lutheran Medical Center in Wheat Ridge, Colorado showing that Mr. Medina was hospitalized between February 12, 2014 and February 19, 2014 because, "He presented with suicidal ideation with a plan to overdose on his sleeping pills." R. 444-46.

It would appear that Dr. Lipetz did not have all of Mr. Medina's medical records when he conducted his case analysis, but the ALJ makes no note of this. Moreover the missing records are critical to the comparative assessment of the opinions of Dr. Lipetz and Ms. Ponder. The failure to note this discrepancy and the importance of it invalidates the ALJ's fourth reason for assigning little weight to Ms. Ponder's opinions.

In summary, the Decision fails to demonstrate application of the correct legal standard governing the evaluation of Ms. Ponder's opinions. This error is not harmless because the ALJ's reasons for assigning little weight to her opinions either cannot be meaningfully reviewed or are not legitimate. The failure to demonstrate application of the correct legal standard requires reversal and remand. Inasmuch as it has determined that this matter must be reversed and remanded, the Court need not address Mr. Medina's remaining arguments. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this matter is **REMANDED** to the ALJ for further proceedings. The Clerk shall enter a judgment in this matter.

Dated this 23rd day of March, 2017

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Court